Filed 12/8/22  In re D.D. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re D.D. et al., Persons Coming Under the Juvenile Court Law. | B319941 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Los Angeles County Super. Ct. No. 18CCJP02204A-B |
| Plaintiff and Respondent, | |
| v. | |
| M.D., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Debra R. Archuleta, Judge.  Affirmed.

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Father M.D. appeals the juvenile court's order terminating his parental rights to his sons D.D. and L.D. Their mother, J.D., is not a party to this appeal. Father's sole contention on appeal is that the trial court erred in finding the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.) did not apply because the Los Angeles County Department of Children and Family Services (Department) made an inadequate initial inquiry concerning the boys' relevant ancestry by failing to inquire with extended family members with whom the Department had contact. We affirm.

## BACKGROUND

### 1. Overview of Proceedings

This dependency proceeding began in 2018, nearly five years ago, when the boys were aged seven and four. At the time of the petition, the boys lived in and out of motels with father and his girlfriend. Father had been caring for the boys for nearly two years after a 2016 referral to the Department based on mother's neglect was resolved by father taking the children from mother's home and agreeing to pursue custody in family court.

In July 2018, the juvenile court ordered the boys removed under Welfare and Institutions Code section 300, subdivisions (a) and (b)(1). The court also ordered reunification services. Removal was based on allegations that father was failing to provide for the boys' basic needs; that father and the girlfriend were using drugs while caring for the boys; and that father and the girlfriend had engaged in domestic violence in the boys' presence. Father appealed this order and we affirmed. (*In re L.D.* (Apr. 30, 2019, B291401) [nonpub. opn.].)

In September 2019, the juvenile court terminated reunification services and scheduled a permanency planning

hearing. Shortly thereafter, the boys were placed with their maternal grandparents in Washington state.

The maternal grandparents were approved for adoption in 2020. At a hearing in January 2021, the court terminated parental rights and ordered adoption by the grandparents as the boys' permanent plan. The court had authorized father to testify at the hearing in support of his claimed parental bond exception but father's testimony was inaudible due to a poor phone connection. Father appealed this order and we reversed. (*In re L.D.* (July 7, 2021, B309852) [nonpub. opn.].) The juvenile court reinstated parents' parental rights in September 2021.

The juvenile court again ordered adoption by maternal grandparents as the boys' permanent plan in January 2022. At a hearing in February 2022, with mother's consent but over father's objection, it again ordered parental rights terminated. It is from this order that father now appeals.

## 2. Facts Relevant to ICWA Inquiry

The Department attached ICWA-010(A) forms to the petition indicating it had made Indian child inquiries and that the boys had no known Indian ancestry. The forms did not identify the person or persons with whom the Department had inquired.

In May 2018, mother appeared in the juvenile court and filed an ICWA-020 form indicating that she had no Indian ancestry as far as she knew. The court asked mother if she had any reason to believe father had Indian ancestry and she responded, "No." On this basis, the court found the ICWA inapplicable but admonished parents to keep counsel, the Department, and the court apprised of any new information relating to Indian ancestry.

At a hearing later the same month, father appeared and filed an ICWA-020 form indicating that he had no Indian ancestry as far as he knew. The juvenile court noted father's denial of Indian ancestry and continued to find the ICWA inapplicable. It also reiterated its admonishment to disclose any new information relating to Indian ancestry. We are directed to no evidence that further information was ever provided pursuant to this admonishment.

Over the course of the proceedings, the Department also had contact with many of the boys' extended family members. It had contact with the maternal grandparents, with whom the children were ultimately placed. It interviewed maternal great-aunt. It interviewed father's cousin on his father's side. It met with paternal grandmother. It met with paternal aunt (father's maternal half sister). And it evaluated paternal relatives in Arizona for potential placement and had contact information for other paternal relatives in Arizona. We are directed to no evidence in the record that the Department ever asked any extended family members about the boys' possible Indian heritage.

## DISCUSSION

Congress enacted ICWA " 'to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families.' " (*In re Isaiah W.* (2016) 1 Cal.5th 1, 8.) It is incumbent upon a state court administering a proceeding where child custody is at issue to inquire whether the subject child is an Indian child. The scope of the duty on the court, as well as certain participants in the proceeding, is defined by federal regulations and related state law. (See, e.g., 25 C.F.R.

4

§ 23.107 (2022); Welf. & Inst. Code, § 224.2; Cal. Rules of Court, rule 5.481.)

The duty of inquiry has three "phases." Father claims error with the first. This phase—the "initial inquiry"—applies in every case. The initial inquiry requires the court and the Department to ask certain persons related to the proceedings about the child's possible Indian ancestry. (See Welf. & Inst. Code, § 224.2, subds. (a), (b), (c); *In re S.S.* (2022) 75 Cal.App.5th 575, 581; *In re D.F.* (2020) 55 Cal.App.5th 558, 566.) The state law initial inquiry requirements exceed those imposed by federal law, which merely require the court to "ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child" and instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child. (25 C.F.R. § 23.107(a) (2022).)

Where the "initial inquiry" gives "reason to believe" the child is an Indian child, but there is insufficient information to make a definitive determination, the second phase—"further inquiry"—comes into play. (Welf. & Inst. Code, § 224.2, subd. (e)(2).) Further inquiry requires more robust investigation into possible Indian ancestry. (See *ibid.*; *In re D.F.*, *supra*, 55 Cal.App.5th at p. 566.)

If further inquiry gives the court a "reason to know" a child is an Indian child, the third phase is triggered. This phase requires that notice pursuant to ICWA be sent to the tribes to facilitate their participation in the proceedings. (Welf. & Inst. Code, § 224.3, subd. (a)(1); *In re D.F.*, *supra*, 55 Cal.App.5th at p. 568.)

5

A juvenile court's finding that ICWA does not apply in a proceeding implies that (a) neither the Department nor the court had a reason to know or believe the subject child is an Indian child; and (b) the Department fulfilled its duty of inquiry.  (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401.)

" ' "[W]e review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order.  [Citations.]  We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance." ' "  (*In re Josiah T.*, *supra*, 71 Cal.App.5th at p. 401.)

Father's claim of error is that the juvenile court found the ICWA inapplicable even though the Department had contact with extended family members from both sides of the boys' family yet failed to ask them about Indian ancestry.  We agree that the Department failed in its initial inquiry obligation imposed by California law to ask "extended family members" whether the boys are, or may be, Indian children.  (Welf. & Inst. Code, § 224.2, subd. (b).)  The Department apparently only asked parents about Indian heritage.  The court also asked parents about Indian heritage and admonished them to keep counsel, the court, and the Department updated with any relevant new information.  While these steps satisfied the lower federal initial inquiry requirements, in the absence of any evidence the Department complied with its section 224.2, subdivision (b) duty to inquire of extended family members with whom it had contact, the court's finding that ICWA does not apply is error.  (See *In re Darian R.* (2022) 75 Cal.App.5th 502, 509 [finding error where evidence

6

showed Department had contact with maternal aunt and maternal grandfather but failed to inquire of them regarding Indian ancestry].)

However, because the court's error is one of state law, we can reverse only if the error was prejudicial.  (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 742 (*Benjamin M.*), citing Cal. Const., art. VI, § 13.)

Courts are divided on what showing of prejudice warrants reversal for initial inquiry errors.  "Some courts have addressed this problem by requiring an appellant who asserts a breach of the duty of inquiry to, at a minimum, make an offer of proof or other affirmative assertion of Indian heritage on appeal."  (*In re S.S., supra,* 75 Cal.App.5th at pp. 581–582, citing cases.)  Others have excused such a showing, effectively treating failure to inquire as error per se.  (See, e.g., *In re Y.W.* (2021) 70 Cal.App.5th 542, 556; *In re J.C.* (2022) 77 Cal.App.5th 70, 80.)  The Fourth Appellate District in *Benjamin M.*, *supra*, 70 Cal.App.5th 735, took a third approach, concluding that "a court must reverse where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child."  (*Id.* at p. 744.)  Our court recently took a fourth approach, concluding initial inquiry errors require reversal only when the record of proceedings in the court or a proffer of evidence made on appeal suggests a reason to believe that the child may be an Indian child.  (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 779, review granted Sept. 21, 2022, S275578.)

7

We have previously rejected the error per se line of cases. (*In re M.M.* (2022) 81 Cal.App.5th 61, 71, review granted Oct. 12, 2022, S276099.)  Under any of the other three lines of cases, the court's error here was harmless.

On the record before us, there is no reason to believe there is readily available information that is likely to bear meaningfully on whether the boys have Indian ancestry.  Mother and father both denied knowledge of any Indian ancestry in signed, written submissions to the juvenile court.  They both reiterated their lack of knowledge of Indian ancestry in person on the record and neither provided additional information to the court about Indian ancestry in the more than four years since being admonished to do so.  As such, this case is unlike *Benjamin M.*  There, the father was entirely absent from the proceedings and no person from the father's side of the family had been asked about Indian ancestry.  With information about ancestry on the father's side completely "missing," inquiry with a person sharing the father's ancestry "would likely have shed meaningful light on whether there [wa]s reason to believe Benjamin [wa]s an Indian child." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.)  No such facts are present here.

Further, we are offered no reason in the record to believe that the other extended family members with whom the Department communicated would have better information about parents' ancestry than parents did.  Mother had robust recent contact with her parents, including a period in which maternal grandparents lived with both parents and the boys.  Father also has a history of close contact with his family members that the Department encountered.  Paternal grandmother and paternal aunt attended some of father's visits with the boys and father

8

was raised for several years by his cousin and cousin's mother (paternal grandfather's sister).

Finally, no one has suggested any reason to believe the boys might have Indian ancestry. Certainly, father has made no offer of proof that they are Indian children. Instead, both parents represented under penalty of perjury that they have no information that the boys may have Indian heritage. Additionally, maternal grandparents were born and raised in the Philippines, further diminishing the likelihood that there is any Indian heritage to be discovered.

Given the absence of any evidence or claim that the boys might have Indian ancestry, father's "unvarnished contention that additional interviews of [relatives] would have meaningfully elucidated [the boys'] Indian ancestry" does not support a finding of prejudice. (*In re Darian R.*, *supra*, 75 Cal.App.5th at p. 510.)

## DISPOSITION

The juvenile court's order terminating parental rights is affirmed.

GRIMES, J.

I CONCUR:

STRATTON, P. J.

9

**WILEY, J., Dissenting.**

With wonder and dismay, I file my 13th dissent on this issue.


WILEY, J.